299 Pa. Superior Ct. 260 (1982)
445 A.2d 744
Veronica MANCINE, Appellant,
v.
CONCORD-LIBERTY SAVINGS AND LOAN ASSOCIATION, Successor to Hibernian Savings and Loan Association (Successor to Hibernian Building and Loan Association).
Superior Court of Pennsylvania.
Argued April 15, 1980.
Filed April 30, 1982.
*262 Charles E. McKissock, Pittsburgh, for appellant.
R.C. Reithmuller, Pittsburgh, for appellee.
Before PRICE, BROSKY and MONTGOMERY, JJ.
*263 PER CURIAM:
Appellant instituted an action by a complaint and an amended complaint in assumpsit against appellees for damages for the unlawful entry of judgment, for the wrongful malicious and fraudulent dispossession of appellant from her home, for loss of her belongings, for the rental value of her home, for the fair market value of her home, for the loss to appellant's reputation, and for exemplary and punitive damages. Preliminary objections of defendant were overruled.
The case proceeded to trial before court and jury. The judgment by confession against Rose Startari, a dead person was void. The court incorrectly held that a "confession of judgment upon a warrant of attorney after the death of the obligor makes the judgment voidable as between the obligor and obligee not void. The lower court erroneously applied the Act of 1705, 1 SmL. 57, Sec. 9, 12 P.S. 2448 and 21 P.S. 795. This Act is limited to voidable judgments, not void judgments.
Appellant filed a timely motion for a new trial and raised, inter alia, that the court erred in applying the aforesaid Act, refusing to allow appellant to prove her offer of proof of damages, and that the Act of 1705, supra., is inapplicable and unconstitutional. The court having denied appellant's motion for a new trial, an appeal was taken to this court.
We reverse.
On September 17, 1969, appellee confessed judgment in the amount of $3,824.22 at D.S.B. 4069 October 1969 against Rose Startari and on the same day, caused a writ of execution at # 577 October 1969, to issue and subsequently sold the property of Rose Startari for $1,699.52.
Rose Startari died November 13, 1966. Veronica Mancine, a daughter of Rose Startari, acquired the property from all her brothers and sisters by deed dated April 24, 1967, recorded April 25, 1967, Deed Book Volume 4387, [Page 145.]
Veronica Mancine was in possession of the premises at 5000 Ladora Street, 15th Ward, Pittsburgh, from sometime during her mother's lifetime until evicted by appellee following the sheriff sale.
*264 The primary object of recording deeds as stated by the Supreme Court is "to give public notice in whom the title resides so that no one may be defrauded by deceptious appearances of title. Salter v. Reed, 15 Pa. 260.
Possession is always constructive notice of the claim of the party in possession. Jamison v. Dimock, 95 Pa. 52. Appellees knew or should have known or could have ascertained that appellant was both the record owner and in possession of the premises prior to and at the time judgment was entered against a dead person.
The judgment entered at DSB 4069 October 1979 on September 17, 1969 against Rose Startari was void. Ladner on Conveyancing, Sec. 12.14 ". . . nor can it be entered after death of the obligor, because the death automatically terminates the warrant of attorney to confess judgment."
Mr. Justice (later Chief Justice) Eagen held in the case of First Federal Savings and Loan Association of Green County v. Porter, 408 Pa. 236 at 241, 183 A.2d 318 (1962), the following:
Her demise automatically terminated the warrant of attorney to confess judgment: Lanning v. Pawson, 38 Pa. 480 (1861); Kummerle v. Cain, 82 Pa.Super. 528 (1924); Ladiner Conveyancing in Pennsylvania, Section 9.21, Page 256 (3d Ed. 1961).
Volume 22, Judgment  Vales, Section 43. The death of a debtor revokes the warrant of attorney to confess judgment. Hence, a judgment entered on a warrant of attorney after the death of a debtor will be striken off. Lawrence v. Smith, 215 Pa. 534, 64 A. 776 (1900); Commonwealth v. Massi, 225 Pa. 548, 74 A. 419 (1909); Stucker v. Shumaker, 290 Pa. 348, 139 A. 114 (1927); Miller v. Reed, 27 Pa. 244 (1856); Lanning v. Pawson, 38 Pa. 480 (1861); Kountz v. National Transit Company, 197 Pa. 398, 47 A. 350 (1900); Stevenson v. Virtue, 13 Pa.Super. 103 (1900); Kummerle v. Cain, 82 Pa.Super. 528 (1924).
The Act of 1705, supra, limiting appellant's right to recovery to the amount paid by appellee at sheriff's sale is not applicable to void judgments.
*265 The judgment under which the sale took place was void and the Act of 1705, supra., was not applicable. Clancey's v. Jones, 4 Yeates 212 (1805); Burd v. Dansdale, 2 Binn 80 (1809); Vastine v. Fury, 2 S&R 426 (1816); Speer v. Sample, 4 Watts 367 (1835); Camp v. Wood, 10 Watts 118 (1984); Bowen v. Bowen, 6 Watts & S. 504 (1843); Springer v. Brown, 9 Pa. 305 (1848); Wilson v. McCullough, 19 Pa. 77 (1852); Evans v. Meylert, 19 Pa. 402 (1852); Gibson v. Winslow, 38 Pa. 49 (1861); Kinter v. Jenks, 43 Pa. 445 (1863); Bartholomew's Church v. Wood, 61 Pa. 96 (1863); Hecker v. Haak, 88 Pa. 238 (1879); Caldwell v. Walters, 18 Pa. 79, 6 Harris 79 (1851).
The case of Caldwell v. Walters, 18 Pa. 79 (6 Harris 79) held
A void judgment is one that does not warrant the issuing of an execution; and in the opinion of this court, a sale under it by the sheriff is not protected by the provisions of the 9th section of the Act of 1705. A sheriff's sale of the land of a decedent on a judgment against an executor de son tort, passes no estate to the purchases: Ness [Nass] v. Van Swearingen [Vanswearingen], 7 S&R 196 [192].
The question whether appellant, an heir of decedent, Rose Startari, the mortgagor, can bring an action for wrongfully confessing judgment against a dead person, Rose Startari, and sell her real property at sheriff sale, has been raised by appellee.
The mortgage and bond were executed by Rose Startari, a widow, mother of appellant, on or about June 7, 1956, who was the then owner in fee of the property which is the subject matter of this litigation. The bond upon which judgment was confessed and the property sold reads, inter alia, "I the said Obligor [Rose Startari] do bind myself, my heirs, executors, administrators and assigns and every one of them, jointly and severally, firmly by these presents." Rose Startari having died intestate on October 13, 1966, survived by numerous children, all of whom (and their respective spouse) conveyed the property on October 13, 1966 to their sister, Veronica Mancine, daughter of Rose Startari, in fee *266 at Deed Book Volume 4387, page 145. Appellant was in possession of said property until directed by appellee to vacate and deliver up the premises by virtue of a writ of possession.
As a direct result of the breach of the "bond agreement" between Rose Startari, her heirs and assigns, and the illegal and void judgment by confession, appellant instituted an action in assumpsit for damages for the fair value of her home wrongfully sold by appellee at sheriff's sale; for damages she incurred because she had to vacate her home; for causing her to give up her belongings and furnishings; for loss of income by way of having to pay room and board at her place of employment; for loss of rental value of her property; for embarrassment and humiliation she suffered; for damage to her reputation.
Appellee contends that the damages sought by appellant for the sheriff sale of her home, etc., were not contractual and appellant does not have the right to maintain a suit in assumpsit.
A mortgage, although in form a conveyance of title, is only security for the payment of money or the performance of another collateral contract. The terms of obligation under the mortgage and the bond accompanying the mortgage continues and are applicable to both parties. At the time in 1969 when appellee illegally and improperly confessed judgment against a dead obligor the power of attorney as part of the bond, had terminated with the death of the obligor. The remaining remedies under the bond and accompanying mortgage continued in full force and effect, which remedies appellee has not sought.
The lower court erroneously limited appellant's right to money damages equal to the bid price at sheriff's sale by applying the Act of 1705, supra., which we have herein held was not applicable to void judgments.
The bond binds the obligor her heirs, executors, administrators and assigns and every one of them, jointly and severally, firmly by these presents.
*267 The bond is applicable to the heirs of Rose Startari by its terms and created a contractual relationship between appellant and appellee.
Paul v. Grimm, 165 Pa. 139, 30 A. 721 (1895), holds one may proceed in assumpsit in cases of contract, express or implied.
Dairyman's Co-operative Sales Association v. McCreary, 132 Pa.Super. 524, 1 A.2d 508, 510, where the court held (page 510), "The damages ordinarily recoverable are those necessarily following the breach, which the party guilty of the breach must be presumed to know would be the probable consequence of his failure: Greenl. Ev. Sec. 253." This rule is well expressed by Strong, J. in Adams Express Co. v. Egbert, 36 Pa. 360.
In the case of Siegel v. Struble Bros., Inc., 150 Pa.Super. 343, 28 A.2d 352, the court said at 354:
The action here, however, was properly brought in assumpsit though sounding in tort. The gist of the action was defendant's negligence and though it might have been brought in trespass, the real issue was whether defendant was guilty of neglect in the performance of its contract. Cowan v. Nagel, 89 Pa.Super. 122. Since the damages sustained by plaintiff were forseeable by defendant as the necessary, ordinary and natural consequences of its negligence, plaintiff was entitled to compensatory damages measured by the rule applicable to assumpsit upon breach of contract. The rule, continuing the principle of the leading English case, Hadley v. Barendale, 9 Exch. 341, 5 Eng.Rul. Cases 502, (1854), is thus stated and discussed in Dairyman's Co-op. Assn. v. McCreary (supra). The damages ordinarily recoverable are those necessarily following the breach, which the party guilty of the breach must be presumed to know would be the probable consequence of his failure. This principle has been followed consistently in many other cases and was adopted in the Restatement, Contracts Sec. 330, as follows: "In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his *268 breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."
On September 15, 1975, an estate was raised for Rose Startari, deceased, in the Orphans' Court Division of Allegheny County and an Administrator was duly appointed. On October 17, 1975, the Administrator filed a petition and obtained a rule to show cause upon the appellee herein why the judgment entered at DSB October Term 1969 on September 19, 1969 should not be set aside. The petition of the Administrator of the Estate of Rose Startari alleged, inter alia, that Rose Startari died on October 13, 1966 and that the warrant of attorney contained in the bond accompanying the mortgage and by which judgment had been entered expired with the death of Rose Startari. On February 25, 1976, the rule to show cause was made absolute and the judgment was set aside. The appellant filed her complaint in assumpsit while the record of the proceedings relating to the sale of the mortgaged property revealed a judgment and execution which on the face thereof was without error. In the complaint in assumpsit as originally filed, the plaintiff sought an accounting for any sum of money received or that should have been received from the sale of the property in excess of the balance due appellee and for judgment in an amount of not less than $11,000, the fair market value of the property, with interest from November, 1969. Appellee filed preliminary objections in the nature of a demurrer and a motion for a more specific pleading.
The lower court overruled the demurrer and directed appellant to file a more specific pleading to paragraph 30 (as to damages) of the amended complaint.
Appellant filed an amended complaint in assumpsit in which she alleged a breach of the agreement and confessing judgment on the bond; in securing the sale of the premises by the Sheriff of Allegheny County based on the void judgment.
*269 A mortgage, although in form a conveyance of title, is only security for the payment of money or the performance of another collateral contract. When the property which is subject to the mortgage is transferred without payment of the mortgage, the property in the hands of the transferee continues to be security for the performance of the obligation, and for any default the mortgagee may seize and sell the property in the hands of the transferee. The contractual relationship between mortgagee and transferee continues by operation of law. The proceedings for obtaining judgment on the bond was illegal and void. The lower court erred by holding that the judgment on the bond was voidable. The court improperly relied on Section 9 of the Act of 1705 supra. The trial court erred in refusing the appellant's offer of proof of damages and limiting the proof as provided in the Act of 1705 supra.
Appellee urges that appellant does not have a right to a suit in assumpsit for wrongfully taking of the property, as appellant's claim is not based on a contract.
"The Rule is broadly stated to permit an amendment `at any time' which follows the prior practice. The period of the statute of limitations is no bar to the amendment of a complaint, where there is no change in the cause of action and no new party is added." Goodrich Amram, Vol. 2, page 363.
Pa.R.C.P. 1020 permits joinder of Assumpsit and Trespass and no election of remedies between assumpsit and trespass shall be required at any time. All causes of action shall be tried together, unless otherwise ordered by the court. "These rules reflect the general principle that plaintiffs should not be forced to elect a particular theory in pursuing a claim and avoids the attendant possibility that meritorious claims will foil because the wrong legal theory was chosen." Schreiber v. Republic Intermodal Corp., 473 Pa. 614, 375 A.2d 1285 (1977). Crumbston v. Sheehan, 100 P.L.J. 307 (1953). The fact that the appellee has labeled his action "assumpsit" is of no importance. The court will examine the complaint in any case to determine the true *270 nature of the action. Dishig v. Smilek, C.P. Montgomery County, Northampton County, Nov. Term 1948, No. 96 (1949).
Pa.R.C.P. Rule 1033 provides:
A party either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.
The right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party Kilian v. Allegheny County Distributors, Inc., 409 Pa. 344, 185 A.2d 517 (1962). As Mr. Chief Justice Horace Stern held in the case of Bruker v. Carlisle Borough, 376 Pa. 330, 102 A.2d 418 (1954):
We conclude, therefore, that the form of action here employed was permissible and we might add that, even if it were otherwise, Courts have the power in any stage of the proceedings to permit a change in the form of action if the same is necessary for a proper decision of the cause upon its merits. [Citations omitted].
In conclusion, we hold the lower court improperly applied the Act of 1705 and limited damages to restitution of the sale price obtained at the sheriff sale. This was, therefore, a wrongful foreclosure.
Damages in assumpsit actions are not only those flowing from the breach thereof, but if the breach is tortious, such damages sounding in tort may also be recovered in assumpsit actions.
We remit this case so that it may be tried in such manner so as not to intrude Sec. 9 of the Act of 1705, supra.
The Judgment of the lower court is reversed and this case is remanded for trial. Appellant is permitted to prove *271 damages in assumpsit not limited to Section 9 of the Act of 1705 1 SmL 57 (12 P.S. 2448 and 21 P.S. 795).
PRICE, J., files a concurring opinion.
PRICE, Judge, concurring:
Although I concur in the majority's conclusion that Section 9 of the Act of 1705 was erroneously applied, I do so for reasons other than those found controlling by the majority. I would also hold that, while appellant did not err in bringing a cause of action in assumpsit, the cause of action cannot properly be predicated on a breach of contract theory.
Appellant's mother, Rose Startari, owned certain real estate at 5000 Ladora Street until her death on October 13, 1966. On May 7, 1956, she executed a mortgage on the real estate to secure a loan of $3,600.00 from Hibernian Savings and Loan Association, predecessor to appellee, Concord-Liberty Savings and Loan Association. Simultaneously, Mrs. Startari executed a bond containing a warrant of attorney to confess judgment, should she default on the mortgage payments.
Mrs. Startari died intestate on October 13, 1966. Several heirs, including appellant, Veronica Mancine, survived her. The heirs jointly conveyed their interest in the real property to appellant on April 24, 1967. Accordingly, appellant took title subject to the mortgage held by appellee, Concord-Liberty Savings and Loan Association (hereinafter referred to as Concord-Liberty). Veronica Mancine later defaulted on the mortgage payments and, on September 18, 1969, Concord-Liberty wrongfully confessed judgment against Rose Startari, the decedent, based on her warrant of attorney.[1] A writ of execution was issued the same day judgment was entered and, on November 3, 1969, Concord-Liberty bought the property at a sheriff's sale for $1,699.52, the amount of costs and taxes.
*272 Two separate actions arose out of the wrongful confession of judgment. First, appellant instituted an action in assumpsit on February 3, 1975. By complaint and an amended complaint appellant sought damages for the unlawful entry of judgment, the wrongful, malicious, and fraudulent dispossession of appellant from her home, the loss of her personal belongings, the rental value of her home, the injury to appellant's reputation, and for exemplary and for punitive damages.
Following the institution of appellant's assumpsit action, an estate was raised for Rose Startari and Jerry Mancine was appointed administrator. The administrator petitioned to set aside the judgment on the grounds that the warrant of attorney expired upon Mrs. Startari's death, that the claim should have been presented to the estate of Rose Startari, and that the estate of Rose Startari was no longer the obligor. On February 25, 1976, while appellant's assumpsit action was still pending, the trial court granted the estate's petition and ordered that the judgment be set aside.[2]
Appellant's assumpsit action proceeded to trial on January 18, 1979, at which time the parties stipulated to the facts pertaining to liability. Defendant-appellee then moved to limit damages as prescribed by Section 9 of the Act of 1705, which provides in pertinent part:
If any of the said judgments, which do or shall warrant the awarding of said writs of execution . . . shall at any time hereafter, be reversed for any error or errors, then. . . none of the said lands . . . shall be restored, nor the sheriffs sale or delivery thereof avoided, but restitution, in such cases, only of the money or price for which such lands were or shall be sold.
Act of 1705, Sm.L. 57, Sec. 9; 12 P.S. 2448 and 21 P.S. 795.
The court granted appellee's motion and directed a verdict for appellant for the amount of $1,699.52, the sale price of *273 the property. Thereafter, appellant filed a motion for a new trial,[3] which the court denied.[4] This appeal is from the judgment entered on the verdict.
Appellant advances three grounds on appeal. First, appellant argues that Section 9 of the Act of 1705 was inapplicable at the time of trial because it was repealed before that date; second, that the Act was inapplicable because appellee failed to comply with Section 6 of the Act which requires that the real party in interest be served with notice of the proceeding; and third, that she should have been permitted to prove damages sounding in tort in the assumpsit action.
Appellant's contention that Section 9 of the Act of 1705 was inapplicable because it was repealed before trial is meritless. The Judicial Code provides, in part, that "[t]he repeal of any civil provisions of a statute shall not affect or impair any act done, or right existing or accrued, or affect any civil action pending to enforce any right under the authority of the statute repealed." Act of Dec. 6, 1972, P.L. 1339, § 3; 1 Pa.C.S.A. § 1976(a).[5] Because all acts giving *274 rise to appellant's cause of action, including the institution of the assumpsit action, occurred before the Act was repealed,[6] the repeal of the Act of 1705 has no bearing on the outcome of the case.
Appellant also argues that Section 9 is inapplicable because appellee failed to give appellant notice of the foreclosure proceedings but, instead, entered judgment against the decedent on an invalid warrant of attorney. The majority reasons that the judgment was void because it was entered on the authority of a power of attorney issued by a dead person and concludes, therefore, that Section 9 of the Act is inapplicable because it only applies to voidable, not void, judgments. To be sure, the law is well-settled that the death of a debtor revokes the warrant of attorney to confess judgment and that any judgment entered on the warrant of attorney after the debtor's death will be stricken off. First Federal Savings and Loan Assoc. of Greene County v. Porter, 408 Pa. 236, 183 A.2d 318 (1962); Kountz v. National Transit Co., 197 Pa. 398, 47 A. 350 (1900); Kummerle v. Cain, 82 Pa.Superior Ct. 528, (1924); Stevenson v. Virtue, 13 Pa.Superior Ct. 103 (1900). The majority is also correct in stating that Section 9 has been interpreted as applying to voidable judgments only, and not to void judgments.[7]Hecker v. Haak, 88 Pa. 238 (1879); Gibson v. Winslow, 38 Pa. 49 *275 (1861); Caldwell v. Walters, 18 Pa. 79 (1851); Ness v. Van Swearingen, 7 S & R 196. However, the majority fails to explain why the judgment in this case is void as against appellant. The law cited by the majority in support of its conclusion states merely that a judgment entered on a warrant of attorney after the obligor's death will be stricken off. That the judgment should be stricken does not necessarily mean it is void.[8]
The better reason for finding Section 9 of the Act inapplicable is that appellee failed to give notice of the foreclosure proceedings to appellant who, being the true owner, was the real party in interest. Section 6 of the Act of 1705 provides, in pertinent part, that
[w]here default or defaults have been or shall be made or suffered by any mortgagor or mortgagors of any lands, tenements or other hereditaments within this province, or by his, her or their heirs, executors, administrators and assigns, of or in payment of the mortgage money, or performance of the condition or conditions which they or any of them should have paid or performed, or ought to pay . . . that in every such case, it shall and may be lawful to and for the mortgagee or mortgagees, . . . and his, her and their heirs, executors, administrators or assigns, at any time after the expiration of twelve months next ensuing the last day whereon the said mortgage money ought to be paid, . . . to sue forth a writ or writs of scire facias, which the clerk of the court of common pleas for the county or city where the said mortgaged lands or hereditaments lie, is hereby empowered and required to make out and dispatch, . . . requiring him, . . . to make *276 known to the mortgagor or mortgagors, his, her or their heirs, executors or administrators, that he or they be and appear before the magistrates, judges or justices of the said court or courts, to show if anything he or they have to say wherefore the said mortgaged premises ought not to be seized and taken in execution for payment of the said mortgage money, with interest, or to satisfy the damages which the plaintiff in such scire facias shall, upon the record, suggest for the breach or nonperformance of the said conditions. . . .
Act of 1705, 1 Sm.L. 57, § 6, 21 P.S. § 791. The procedure for mortgage foreclosure is a creature of statute and, therefore, the requirements must be strictly followed. Federal Land Bank of Baltimore v. King, 294 Pa. 86, 143 A. 500 (1928).
Clearly, Concord-Liberty failed to give appellant notice as is required by the Act.[9] Moreover, Concord-Liberty did not proceed by a writ of scire facias[10] as required by Section 6. Rather, appellee improperly proceeded by writ of fieri facias,[11]see Act of May 6, 1929, P.L. 1557, § 1; 1951, Sept. *277 26, P.L. 1450, No. 352, § 1; 21 P.S. § 804, and confessed judgment on the invalid warrant of attorney. Having failed to comply with the strict mandates of the Act by failing to give appellant notice and an opportunity to defend, Concord-Liberty cannot now use Section 9 of the Act to its advantage. For that reason, I concur in the result reached by the majority to remand this case to be tried without application of Section 9 of the Act of 1705.
Finally, appellant argues that she correctly brought her cause of action in assumpsit because, as she states, the action arose from appellee's breach of the terms of the mortgage. Furthermore, appellant submits that she is entitled to damages sounding in tort, for the tortious breach of contract. I disagree.
Although appellant should be permitted to maintain the cause of action in assumpsit, it cannot be predicated on a breach of contract theory. The record reveals, by appellant's own admission, that she breached the terms of the mortgage by defaulting on the payments. Although appellant is correct that appellee wrongfully confessed judgment and issued execution, it is axiomatic that she cannot claim that appellee breached when, in fact, it was appellant who breached.
Because appellee did not breach a contract, appellant cannot allege a tortious breach and, therefore, cannot claim damages sounding in tort. Thus, she is limited to damages in assumpsit.
Accordingly, I would remand this case to permit appellant to prove damages in assumpsit, not limited by Section 9 of the Act of 1705.
NOTES
[1] The judgment, entered by confession based on the warrant of attorney executed by the decedent, was void for the reasons discussed herein.
[2] The court did not determine in that action whether the judgment was void or voidable. That determination was unnecessary to resolve the estate's petition to strike the judgment. The issue whether the judgment was void or voidable arose during Veronica Mancine's proceedings, which is the subject of this appeal.
[3] In her motion for a new trial, appellant argued that the court erred in: (1) limiting damages as prescribed by the Act of 1705, Section 9, (2) denying recovery of damages sounding in tort in an assumpsit action and (3) refusing to allow her to prove her offer of proof of damages.
[4] In denying appellant's motion, the court reasoned that the judgment was voidable rather than void, and that the Act properly applies to voidable judgments. Next, the court declared that appellant, Veronica Mancine, lacked standing to collaterally attack the voidable judgment because only void judgments may be collaterally attacked by third parties. This conclusion is illogical in light of the fact that the court not only exercised jurisdiction over the matter, but also found for appellant. Finally, the trial court held that appellant was not entitled to recover damages sounding in tort in an assumpsit action.
[5] Subsection (a) of 1 Pa.C.S.A. § 1976 continues as follows:

.....
Such action may be proceeded with and concluded under the statutes in existence when such action was instituted, notwithstanding the repeal of such statutes, or such action may be proceeded with and concluded under the provisions of the new statute, if any, enacted.
Section 9 of the Act of 1705 was repealed June 27, 1978 by the Act of 1978, P.L. 202, No. 53, § 2(a)[7]. The disposition of this section to 42 Pa.C.S.A. § 1722 and § 5105(f) reveals that no new statute was enacted to replace the former. Therefore, Section 9 would have been applicable, except for other reasons stated herein. See text infra at 751-753.
[6] Appellant's action went to trial on January 18, 1979. The Act of 1705 was repealed on June 27, 1978. However, the events giving rise to appellant's claim occurred before June 27, 1978.
[7] The purpose of Section 9 of the Act of 1705 is to protect the purchaser's title in the event of a reversal of judgment under which the sale was made. However, this protection applies only when the judgment is reversed for irregularities or errors. When the judgment under which the sale takes place is not merely voidable, but void, the purchaser's title is not protected, and Section 9 is deemed inapplicable. See Caldwell v. Walters, 18 Pa. 79 (1851). See also Kinter v. Jenks, 43 Pa. 445 (1863); Gibson v. Winslow, 38 Pa. 49 (1861); Wilson v. McCullough, 19 Pa. 77 (1852).
[8] A judgment entered by confession on the authority of a bond accompanying a simple promise to pay money, after the death of the promisor and without an action brought in the promisor's lifetime is irregular and will be vacated on the application of the legal representatives or heirs of the decedent. Lanning v. Pawson, 38 Pa. 480 (1861); Kountz v. National Transit Co., 197 Pa. 398, 47 A. 350 (1900); Kummerle v. Cain, 82 Pa.Superior Ct. 528 (1924); Sleeper v. Hickey, 26 Pa.Superior Ct. 59 (1904). However, a judgment is not void merely because it is erroneous and subject to be set aside by the court which rendered it or to be reversed by an appellate court. Stevenson v. Virtue, 13 Pa.Superior Ct. 103 (1900).
[9] Appellee's failure to give notice was also in derogation of a fundamental principle of law.

[w]here the purpose of the proceeding is to obtain a judgment affecting interests in things, notice in some form must be given to the persons whose interests are affected, and they must be given an opportunity to protect their interests. Otherwise the judgment is void as to such persons.
Restatement, Judgments, § 6, Comment g (emphasis added).
[10] A writ of scire facias is "[a] judicial writ, founded upon some matter of record, such as a judgment or recognizance and requiring the person against whom it was brought to show cause why the party bringing it should not have advantage of such record . . ." Black's Law Dictionary 1513 (4th Ed. 1968).
[11] A writ of fieri facias is, in practice, "a writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor." Black's Law Dictionary 754 (4th Ed. 1968).

This process is codified at Section 804 of Title 21 of Purdon's which states:
No inquisition shall be necessary in connection with the sale of a real estate by the sheriff, upon a writ of fieri facias, issued upon a judgment entered upon a bond or promissory note accompanying a mortgage, secured upon the real estate to be sold; and the sheriff may, after giving notice in the manner now provided by law in cases of sales under writs of venditioni exponas, proceed to sell such real estate upon the said writ of fieri facias without any other writ whatever.
Act of May 6, 1929, P.L. 1557 § 1; 21 P.S. § 804.
Appellees proceeded by writ of fieri facias, which was improper and constituted void process because the warrant of attorney upon which it proceeded was invalid.